IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **MICHAEL WHITE and DAVID WHITE,** | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:13-cv-0050-O** |
| | § | |
| **DWAYNE JACKSON and CITY OF** | § | |
| **HOLLIDAY, TEXAS,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Second Motion and Brief to Dismiss for Failure to State a

Claim and Alternative Request for Rule 7(a) Reply to Immunity, filed October 8, 2013 (ECF No.

23). Having considered the motion, response, reply, pleadings and applicable law, the Court grants

in part and denies in part Defendants' motion.

## I.     Factual Background and Procedural History

Plaintiffs Michael White and his father, David White, filed this action pursuant to 42 U.S.C.

§ 1983, against the City of Holliday, a municipality in Archer County, Texas, and Dwayne Jackson,

a police officer for the City of Holliday at the time of the incident made the basis of this lawsuit.

This case arises from Officer Jackson's alleged use of excessive force against Plaintiffs during the

April 20, 2011 arrest of Plaintiff Michael White for driving while intoxicated. Plaintiffs contend that

Officer Jackson's use of force violated the Fourth Amendment and was in retaliation for protected

speech in violation of the First Amendment. In addition to suing Officer Jackson, Plaintiffs sue the

City of Holliday, alleging, among other things, that the City had policies and practices that showed

manifest indifference to the use of excessive force by its police officers, and failed to adequately

train or supervise its officers as to the use of force.  Officer Jackson and the City move to dismiss

the First Amended Complaint, arguing that Plaintiffs have failed to allege a constitutional violation

arising from the April 20, 2011 arrest.  In support of dismissal, Officer Jackson also contends that

his use of force was objectively reasonable, and he is entitled to qualified immunity, or, alternatively,

the Court should require Plaintiffs to file a Rule 7(a) reply.

The Court now sets out the applicable facts upon which it relies in deciding the pending

motion to dismiss.  The facts are drawn from Plaintiffs' First Amended Complaint, which is the live

pleading.  *See* ECF No. 20, First. Am. Compl.[1]

After leaving a convenience store, Michael White drove on a public highway to a work site

where he was part of a crew working on an oil rig with his father, Plaintiff David White, and others.

*Id.* ¶ 10.[2]  After entering the property on which the oil rig was located, Officer Jackson directed

Michael White from the level entrance to an adjacent uneven area to conduct various field sobriety

tests, and re-positioned the police car to capture the events on the car's audio/video recording device.

*Id.* ¶ 11.  Upon being taken to the uneven area, Michael White became upset, complained as to the

location and began to yell about his treatment and what was being done generally.  *Id.* ¶ 12.  Michael

White told Officer Jackson that he would not do the "fairy dance" (referring to the field sobriety

---

[1] In reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

[2] The Complaint contains no allegations regarding when Officer Jackson first observed Michael White in his car, how long he followed White, or when White exited his truck.

tests) because the ground was uneven and broken. *See id.* Officer Jackson then escorted Michael White out of camera range. *See id.*

David White, upon seeing the activity at the entrance of the property, approached the entrance. *See id.* Officer Jackson told David White and others to leave the area. Upon information and belief, David White and the other observers were more than twenty-five feet from Officer Jackson and Michael White. *Id.* ¶ 13. At some point in time during these events, a deputy from the Sheriff's Department arrived. *See id.*

In response to Michael White's yelling and complaints about his treatment, Officer Jackson became visibly irritated and said he could do whatever he wanted, stomped around, and "said that nobody was going to stop him." *Id.* ¶ 14. Officer Jackson told Michael White to walk in a straight line, which he refused to do. *See id.* Officer Jackson then left Michael White alone, went to his police car, and returned with handcuffs, which he placed on Michael White without incident. *Id.* ¶ 15. Officer Jackson thereafter moved Michael White from the uneven area, where the actions were being recorded, toward Michael White's truck. *See id.*

While being moved in the direction of his truck, Michael White stopped to tell his father something else, and Officer Jackson became noticeably angrier and his voice became louder. *Id.* ¶ 16. During this time period, portions of the events were not recorded, "despite the in-car camera system having been activated and functioning properly minutes before." *See id.* Michael White again called out to his father, asking him to call his attorney. *Id.* ¶ 17. Officer Jackson suddenly turned and used his taser on Michael White until such time as Michael White collapsed to the

ground.  *See id.*[3]   Officer Jackson then picked up Michael White and placed him in the rear of the police car.  *See id.*   At no time preceding Officer Jackson's use of the taser was Michael White resistant to Officer Jackson's verbal instructions or "physical pushing/pulling[.]"  *Id.* ¶ 18.  Michael White did not "make any furtive gestures, sudden movements, attempt to flee, or engage in any actions that could be seen as threatening or uncooperative — other than his verbal complaints and comments as to Defendant Jackson."  *See id.*

After Michael White collapsed to the ground, David White heard Officer Jackson talk about impounding Michael White's truck, and any other vehicles around it.  *Id.* ¶ 20.  David White informed Officer Jackson that they needed Michael White's truck at the work site, after which Officer Jackson stated he could do whatever he wanted with the vehicles, and there was nothing anyone could do about it.  *See id.*   After announcing his intentions to retrieve tools from Michael White's truck, as David White reached into the bed of the truck, Officer Jackson walked next to him and, without warning or notice, struck David White's hand with a solid object.  *Id.* ¶ 21.[4]   David White was momentarily stunned from the sudden attack and pulled his hand back in pain, noticing the skin was broken and beginning to bleed.  *See id.*   At no time before striking David White's hand did Officer Jackson tell David White not to approach the truck or remove items from it.  *Id.* ¶ 22.

---

[3]In his Answer, Officer Jackson denies using a taser during the incident.  *See* Jackson Ans. to Am. Compl. ¶¶ 3.08, 3.15.  As this is a motion to dismiss, the Court must accept all well-pleaded facts in the first amended complaint as true and view them in the light most favorable to the plaintiff, and therefore accepts for purposes of ruling on the pending motion that Officer Jackson tasered Michael White.  *See Sonnier*, 509 F.3d at 675.  Whether Officer Jackson in fact used the taser is an evidentiary question for summary judgment or trial.

[4]In his Answer, Officer Jackson denies striking or having any physical contact with David White.  *See* Jackson Ans. to Am. Compl. ¶¶ 3.10, 3.15.  Accepting all well-pleaded facts in the first amended complaint as true and viewing them in the light most favorable to the plaintiff, the Court accepts for purposes of ruling on the pending motion that Officer Jackson struck Michael White.  *See Sonnier*, 509 F.3d at 675.

Before Officer Jackson assaulted David White, David White had not engaged in any conduct that was threatening or contrary to any instruction, and had not attempted to interfere with Officer Jackson's arrest of Michael White.  *Id.* ¶ 23.

## II.   Legal Standard

To defeat a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).  The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79.  When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*  However, the Court does "not accept as true conclusory allegations, unwarranted factual

5

inferences, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

In ruling on a motion to dismiss under Rule 12(b)(6), the Court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Likewise, documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Id.*

## III.   Analysis

Plaintiff Michael White sues the City of Holliday and Officer Jackson pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights under the First and Fourth Amendments of the United States Constitution. Plaintiff David White also brings § 1983 claims against the City and Officer Jackson for Fourth Amendment violations. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

The City of Holliday and Officer Jackson have moved to dismiss Plaintiffs' § 1983 claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and Officer Jackson also asserts he

6

is entitled to qualified immunity from this lawsuit, or, alternatively, Plaintiffs should be required to file a Rule 7(a) reply.  The Court first considers the City's grounds for dismissal.

### A.      The City of Holliday & Officer Jackson Sued in His Official Capacity[5]

The City moves to dismiss Plaintiffs' § 1983 claims arguing that Plaintiffs have failed to state a constitutional deprivation under the First or Fourth Amendment, have failed to adequately allege a custom or policy that resulted in a deprivation of their constitutional rights, have failed to adequately allege a claim for failure to train, and are impermissibly seeking to hold the City vicariously liable for Officer Jackson's alleged actions.  For the reasons stated below, the Court concludes that the City's motion to dismiss Plaintiffs' § 1983 claims should be granted, as Plaintiffs have failed to adequately allege that the City's actions, through its duly enacted policies or customs promulgated by its policymakers, were the motivating force behind any alleged constitutional violations, have failed to identify a policymaker, and failed to adequately allege a failure to train or supervise that directly caused their injuries.[6]

Section 1983 does not allow a municipality to be held vicariously liable for its officers' actions on a theory of respondeat superior.  42 U.S.C. § 1983; *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).  Rather, a municipality may be liable under § 1983 if the

---

[5]To the extent that Plaintiffs are suing Officer Jackson in his official capacity, an official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Thus, Plaintiffs' allegations against Officer Jackson in his official capacity are claims against the City of Holliday.  *See id.*

[6]The Court's finding that Plaintiffs have failed to allege a custom or policy that resulted in a constitutional deprivation obviates the need to address the City's argument that dismissal is also required for Plaintiffs' failure to assert an underlying cognizable constitutional claim.

execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690-91 (1978). "Official policy" is defined as:

1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.  A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). A plaintiff must identify the policy, connect the policy to the governmental entity itself, and show that his injury was incurred because of the application of that specific provision. *See Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir. 1984). A plaintiff must establish that a governmental entity through its deliberate conduct was "the moving force behind the injury alleged," and must establish a direct causal link between the governmental action and the deprivation of a federally protected right. *See Bryan Cnty.*, 520 U.S. at 404. Liability must rest on official policy, not the policy of an individual officer. *Bennett*, 728 F.2d at 769. When the wrongdoer is a policymaking official, a single act will suffice, if deliberate indifference and causation are established. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "When the challenged conduct relates to a custom or behavior among non-policymaking employees, which may be contrary to official policy, a plaintiff cannot rely on a single instance of unconstitutional conduct, but must demonstrate at least a pattern of similar incidents in which citizens were injured . . . to

8

establish the official policy requisite to municipal liability under section 1983." *Duvall v. Dallas County*, 2008 WL 4561563, at *8 (N.D. Tex. Oct. 10, 2008) (Lindsay, J.) (internal quotations and citation omitted); *see also Bennett*, 728 F.2d at 768 n.3 ("Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability."). For a facially constitutional policy, the plaintiff must demonstrate that the policy was promulgated with deliberate indifference to known or obvious unconstitutional consequences. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001); *accord Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849-50 (5th Cir. 2009) (discussing failure to train or supervise officers).

To hold a municipality liable under § 1983 due to a policy of inadequate training, a plaintiff must show that (1) the training procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused the plaintiff's injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989); *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).

In support of its motion to dismiss, the City argues that Plaintiffs fail to identify a policymaker and fail to identify a policy which was involved in, or caused, a violation of civil rights. *See* Def. Mot. at 5-7. The City contends that Plaintiffs "simply make[] nothing but conclusory allegations attempting to equate the actions of the individual Defendant Officer Jackson with actions that can be charged to the City . . . Apparently, in an effort to try to avoid the fact that the Complaint essentially tries to establish respondeat superior liability as to the City, Plaintiffs plug in formulaic recitations – devoid of specific facts – about alleged *de facto* policies [and an allegation of a] general reputation on the party of the City of Holliday's Police Department" to condone excessive force. *See*

9

*id.* at 5-6. With regard to Plaintiffs' allegation that the City has no system of personnel evaluation holding individuals accountable for their actions (*see* First Am. Compl. ¶ 30), the City argues that "Plaintiffs provide no specific factual allegation to demonstrate this lack of accountability and further provide[] no specific factual allegation as to a failure of any person in any particular situation to be held accountable to perform within established standards of professional conduct." Def. Mot. at 7.

In response, Plaintiffs "acknowledge that their Complaint is deficient as to the naming of the police chief as the policymaker responsible for ensuring that his training policies were inadequate [sic] and/or non-existent [sic] as to the appropriate use of force[,]" but contend that their remaining allegations are nevertheless sufficient to allege municipal liability *See* Pl. Resp. at 4. Plaintiffs seek leave to amend the pleadings to correct pleading deficiencies. *Id.*

In reply, Defendants argue that leave to amend should be denied since Plaintiffs have already had the opportunity to amend the pleadings after Defendants filed their first motion to dismiss. *See* Def Reply at 2-3 (". . . [D]espite being given notice and an opportunity to cure deficiencies, Plaintiffs now want to take a third bite at the apple and want to once again amend the Complaint . . . Plaintiffs should not be allowed to amend another time to once again try to assert a claim against the City."). The Court agrees.

Given that Plaintiffs had prior opportunities to cure any pleading deficiencies *after* Defendants field their initial motion to dismiss (*see* ECF No. 12), and in light of potential undue prejudice to Defendants of having to file a third motion to dismiss on the same grounds, the Court denies Plaintiffs' request. *See generally In re Southmark Corp.*, 88 F.3d 311, 314-315 (5th Cir. 1996) (in considering whether to permit amendment of the pleadings, the district court may consider

factors such as whether there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility of amendment"). Even were the Court to allow Plaintiffs to once again amend their complaint to cure the deficiencies relating to allegations about a policymaker, such amendment would be futile, as Plaintiffs' conclusory allegations regarding *de facto* policies and an alleged "general reputation" by the City's police department to allow excessive force are insufficient. *See generally Iqbal*, 556 U.S. at 680–681.

Having considered the First Amended Complaint, the parties' legal briefs, and governing law, the Court finds that Plaintiffs have failed to adequately allege that the City had a custom or policy that resulted in a deprivation of Plaintiffs' constitutional rights under the First or Fourth Amendments, or to adequately allege that their injuries were caused by a municipal policymaker who was deliberately indifferent in adopting unconstitutional training policies. *See generally Monell*, 436 U.S. at 690-91; *Bryan Cnty.*, 520 U.S. at 404; *Webster*, 735 F.2d at 841; *City of Canton*, 489 U.S. 378, 388-89. Plaintiffs' allegations are about this one incident involving Officer Jackson, that they allege resulted in a constitutional deprivation, from which Plaintiffs ask the Court to infer that the City had a *de facto* policy or customary practice of allowing excessive force by its peace officers, or that the City engaged in ratification by inaction. As the Court has already noted, pleadings pertaining to individual actions taken in this specific case do not suffice to establish a pattern necessary for municipal liability based on custom or practice. *See Bennett,* 728 F.2d at 768 n.3. In short, Plaintiffs have failed to adequately allege that the City's actions, through its duly enacted policies or customs promulgated by its policymakers, was the motivating force behind any alleged constitutional deprivation.

11

Following *Twombly* and *Iqbal*, Plaintiffs have the burden to allege facts that show entitlement to relief. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 213 (5th Cir. 2009). Well-pled facts that merely permit an inference of possible misconduct do not show entitlement to relief as required by Rule 8(a)(2). *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (relying on *Iqbal*). Without enough facts to permit the inference of an official custom or policy that resulted in Plaintiffs' alleged injuries, their claims against the City (and Officer Jackson in his official capacity) necessarily fail. *See McClure v. Biesenbach*, 355 F. App'x 800, 803-04 (5th Cir. 2009) (finding that Plaintiffs must plead facts showing that a policy or custom existed to state a claim, and affirming dismissal of municipal liability claims because the complaint alleged insufficient facts).

For the foregoing reasons, the Court grants the City of Holliday's motion to dismiss Plaintiffs' § 1983 claims. A Rule 54(b) final judgment dismissing Plaintiffs' claims against the City and Officer Jackson in his official capacity will issue separately. *See* Fed. R. Civ. P. 54(b).

### B.      Officer Jackson Sued in His Individual Capacity - Fourth Amendment Claims

Officer Jackson argues that Plaintiffs' excessive force claims against him should be dismissed for failure to state a claim, and asserts his entitlement to dismissal based on qualified immunity. Def. Mot. at 14-16.

### 1.      Qualified Immunity Standard

The doctrine of qualified immunity protects government officials sued pursuant to 42 U.S.C. § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo*, 446

12

U.S. 635, 640 (1980). Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Id.* This doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Courts generally apply the two-pronged analysis established in *Saucier v. Katz*, 533 U.S. 194 (2001), in determining whether a government official is entitled to qualified immunity for an alleged constitutional violation. The first prong of the *Saucier* analysis asks whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. *Saucier*, 533 U.S. at 201. If the record sets out or establishes no violation, no further inquiry is necessary. On the other hand, if the plaintiff sufficiently pleads or establishes the violation of a constitutional or federal statutory right, the Court then asks whether the right was clearly established at the time of the government official's alleged misconduct. *Id.* If there are sufficient allegations or evidence to support the violation of a constitutional right, the court asks whether, nevertheless, qualified immunity is appropriate because defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.,* 543 F.3d 221, 225 (5th Cir. 2008). A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, the right must not only be established in an abstract sense, but in a more particularized sense so that it is apparent to the official that his actions are unlawful in light of pre-existing law. *Id.*

13

The Supreme Court has clarified that it is no longer mandatory for courts to consider the two prongs set out in *Saucier* in order, although the Court noted that it may be beneficial to do so. *Pearson*, 555 U.S. at 236. Under *Pearson*, courts are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Id.*

### 2.      Discussion

Michael and David White both allege that Officer Jackson used excessive force in connection with Michael White's April 20, 2011 arrest. The Court turns first to Michael White's excessive force claims.

### a.      *Michael White's Excessive Force Claims*

It is clearly established that the Fourth Amendment confers a "right to be free from excessive force during a seizure." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). To establish that Officer Jackson violated his constitutional right to be free from excessive force, Plaintiff Michael White must show: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Id.* at 628 (citing *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir.2009)). Assuming the pleadings allege a constitutional violation, the Court must determine whether the law was clearly established at the time of Officer Jackson's conduct, and if so, whether Officer Jackson's use of force was "objectively reasonable" in light of the facts and circumstances confronting him. *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008); *see generally Graham v. Connor*, 490 U.S. 386, 396 (1989).

In evaluating whether the use of force was reasonable, courts look to the "totality of the circumstances," "giving 'careful consideration to the facts and circumstances of each particular case,

including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013) (quoting *Graham*, 490 U.S. at 396) (internal citation omitted) (the "*Graham* factors"). Courts must evaluate the officer's action "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Poole*, 691 F.3d at 628 (citing *Graham*, 490 U.S. at 396).

First, Michael White must allege an injury. In his First Amended Complaint, Michael White alleges that as a result of Officer Jackson's use of the taser, he "collapsed to the ground" and due to Officer Jackson's wrongful acts he "was caused to suffer physical pain and suffering and mental anguish." First Am. Compl. ¶¶ 17, 38. Although Officer Jackson challenges the sufficiency of these allegations, the Court finds that Michael White has adequately alleged a plausible claim that he was injured based on Officer Jackson's conduct. *See Iqbal*, 556 U.S. at 678–79. The Court now turns to whether Michael White has adequately alleged that Officer Jackson's use of force was clearly excessive to the need and objectively unreasonable.[7]

Officer Jackson contends that his conduct was not excessive to the force needed nor objectively unreasonable. Although there is no fact pattern identical to this case, the Fifth Circuit recently ruled that the use of a certain force after an arrestee had been restrained and handcuffed was excessive and unreasonable. *See Ramirez*, 716 F.3d at 378-79 (denying qualified immunity where

---

[7]Given the significant overlap in analysis, the Court will consider in tandem whether Plaintiffs have adequately alleged that the use of force was clearly excessive or clearly unreasonable. *See generally Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (addressing simultaneously the questions of whether force used was "excessive" and "unreasonable"); *Poole*, 691 F.3d at 628 (recognizing the "intertwined" nature of the inquiry for addressing excessive force clams where qualified immunity at issue, and examining whether officers' use of force was clearly excessive or clearly unreasonable in tandem).

officer used taser on subdued and handcuffed suspect, even where suspect had initially pulled away from officer's attempt to handcuff him); *see also Newman v. Guedry*, 703 F.3d 757, 762-63 (5th Cir. 2012) (denying qualified immunity where officers immediately resorted to nightstick and taser where suspect did not pose threat to officers' safety and did not resist officers or attempt to flee); *Chacon v. City of Austin, Texas*, 2013 WL 2245139, at *15 (W.D. Tex. May 31, 2013) (denying qualified immunity where officer tased suspect twice while suspect was on his knees, and at most resisting officers' efforts to push him down onto his stomach); *Bush*, 513 F.3d at 501-02 (denying qualified immunity where officer used excessive force that was objectively unreasonable and in violation of clearly established law when he forcefully slammed a suspect's face into a vehicle after subduing her and placing her in handcuffs).

Based on this body of case law, as well as the *Graham* factors, the Court concludes that Michael White's allegations are sufficient to state a claim that Officer Jackson used clearly excessive force that was unreasonable. First, the Court considers the "severity of the crime at issue[,]" *Graham*, 490 U.S. at 396, in this case driving while intoxicated. This factor weighs in favor of minimal force. *See Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (lower amount of force justified where plaintiff was stopped for speeding). The second factor is whether Michael White posed an immediate threat to the officers or others. *Graham*, 490 U.S. at 396. Based on the allegations, a reasonable officer could not have concluded that Michael White posed an immediate threat to the safety of Officer Jackson, as he alleges he was already handcuffed at the time he was tased and not resisting Officer Jackson pushing and pulling him toward the vehicle. According to the pleadings, at no time preceding Officer Jackson's use of the taser was Michael White resistant to Officer Jackson's verbal instructions or "physical pushing/pulling[.]" First Am. Compl. ¶ 18.

Stopping to yell to his father to call his attorney, without more, is insufficient to find an immediate threat to the safety of the officers. Officer Jackson relies on *Poole*, which is distinguishable. 691 F.3d at 628. In *Poole*, officers witnessed Poole driving in a reckless manner, Poole threw an unknown liquid onto the police car following him, and after being stopped and smelling of alcohol, Poole resisted arrest and was tased. *Id.* In *Poole*, the majority held that an objectively reasonable officer could have found Poole to be a threat because he raised his hands at one of the officers and invited the officer to punch him prior to the tasing. *Id.* at 627-29. Unlike the suspect in *Poole*, based on the allegations, Michael White never attempted to strike Officer Jackson or suggested Officer Jackson strike him. He could not have raised his hands as he was handcuffed. This factor therefore weighs in favor of Michael White. As to the final factor, whether Michael White was "actively" resisting arrest or attempting to evade arrest by fleeing, *see Graham*, 490 U.S. at 396, taking all allegations in the pleadings as true, the Court finds that these factors weigh in favor of Michael White. According to the pleadings, Michael White did not "make any furtive gestures, sudden movements, attempt to flee, or engage in any actions that could be seen as threatening or uncooperative — other than his verbal complaints and comments as to Defendant Jackson." First Am. Compl. ¶ 18. Further, although Officer Jackson arrested Michael White for driving while intoxicated, there were "no charges for resisting arrest, disorderly conduct, etc. or allegation of threatening conduct by Michael which would give rise to a lawful basis requiring the use of force." *Id.* ¶ 19. The Court also notes that cases in this area make a distinction between "active" and "passive" resistance. *See Chacon*, 2013 WL 2245139, at *14 (citing *Deville*, 567 F.3d at 167). There are simply no allegations that would lead the Court to conclude that Officer Jackson was

17

confronted with active resistance or a suspect attempting to flee.  Accordingly, this final factor also weighs in favor of Michael White.

Accepting all well-pleaded facts in the complaint as true, as the Court must at this stage, *see Sonnier*, 509 F.3d at 675, and after evaluating the *Graham* factors, *supra*, the Court concludes that a reasonable officer would view Officer Jackson's use of force as clearly excessive and unreasonable under the circumstances.  *See  Ramirez*, 716 F.3d at 378-79; *Newman*, 703 F.3d at 762-63; *Chacon v. City of Austin, Texas*, 2013 WL 2245139, at *15; *see also Bush*, 513 F.3d at 501-02.

Having found that there are sufficient allegations to support the violation of a constitutional right under the Fourth Amendment for excessive force, the Court must determine whether, nevertheless, qualified immunity is appropriate because Officer Jackson's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question."  *See Hampton Co. Nat'l Sur.,* 543 F.3d at 225.   Officer Jackson argues that his conduct was not objectively unreasonable under clearly established law.  As already stated, "the contours of the right must be sufficiently clear that a reasonable public official would understand that what he is doing violates that right."  *Anderson*, 483 U.S. at 640.  "The central concept is that of 'fair warning': The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."  *Newman*, 703 F.3d at 763 (internal quotations and citations omitted).  In *Ramirez*, the Fifth Circuit recently re-visited its holding in *Newman* regarding the law on the use of tasers, stating "In *Newman v. Guidry*, we addressed whether the law on the use of tasers was clearly established at the time of an event that occurred before the incident between Ramirez and [Officer] Martinez."  716 F.3d at 379.  The events in Newman took place in August

2007. *See Newman*, 703 F.3d at 759. The *Ramirez* court quoted *Newman* in determining whether the law regarding taser use was clearly established at the time of the events at issue:

> Guedry contends that he had no reasonable warning that tasing Newman multiple times violated Newman's constitutional rights, because there was then no binding case law on the appropriate use of tasers. Lawfulness of force, however, does not depend on the precise instrument used to apply it. Qualified immunity will not protect officers who apply excessive and unreasonable force because their means of applying it is novel.

*Id.* (quoting *Newman*, 703 F.3d at 763-64). The *Ramirez* court, relying on *Newman*, held that where "Ramirez alleged he posed no threat to officers and yet was tased twice, including once after he was handcuffed and subdued," the district court did not err in denying the officer qualified immunity on Ramirez's claim for excessive force. *See id.*

Based on prior case law, where courts have denied qualified immunity in instances where officers have tased suspects after they have been handcuffed and subdued, as well as the above analysis of the *Graham* factors, the Court concludes that Officer Jackson is not entitled to qualified immunity on Plaintiff Michael White's § 1983 claim for use of excessive force in violation of his Fourth Amendment. Specifically, Plaintiff Michael White has adequately stated a claim that Officer Jackson's use of the taser, when Plaintiff was handcuffed and not engaging in active resistance or attempting to flee, was objectively unreasonable under clearly established law. *See Newman*, 703 F.3d at 764; *Ramirez*, 716 F.3d at 378-79; *Chacon*, 2013 WL 2245139, at *15; *see also Bush*, 513 F.3d at 501-02. Accordingly, the court denies Officer Jackson's motion to dismiss based on qualified immunity, and denies as moot Officer Jackson's alternative request for Rule 7(a) Reply.[8]

---

[8]In reaching this decision, the Court recognizes the "perilous circumstances under which much of law enforcement work is carried out and the inevitable need for split second decisions." *See Ramirez*, 716 F.3d at 380 (Jones, J. dissenting). The Court further recognizes that the law in question must be clear, "under reasonably analogous circumstances confronted by an officer, that no reasonable officer would use that

b.      *Plaintiff David White's Excessive Force Claims*

Unlike Michael White's excessive force claims, the Court determines that Plaintiff David White has failed to allege a constitutional violation for excessive force.  To establish that Officer Jackson violated his constitutional right to be free from excessive force, Plaintiff David White must show: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Poole*, 691 F.3d at 628. David White alleges he took actions to retrieve tools from the bed of Michael White's truck after Officer Jackson stated an intention to impound the truck.  First Am. Compl. ¶¶ 20-23.  The complaint also alleges that "Defendant Jackson said he would do whatever he wanted with the vehicles and there was nothing anyone could do about it." *Id.* ¶ 20.  These allegations make clear that despite knowing of Officer Jackson's intention to impound the truck, David White decided to approach the truck and begin reaching for tools in the bed of the truck.  Under these circumstances, Officer Jackson could reasonably have believed that he should not allow David White to grab tools that could potentially be used as weapons.  On the face of the First Amended Complaint, there are simply no allegations from which the Court can find a claim for excessive force.  As correctly argued by Officer Jackson, even if Officer Jackson struck David White's hand causing injury (which Officer Jackson denies), this would not be excessive force under the circumstances alleged by Plaintiffs as Officer Jackson could certainly have concluded that striking David White in the hand while he was

---

quantum of force." *Id.* at 381 (internal quotations and citation omitted).  This standard operates to "protect officers from the sometimes 'hazy border between excessive and acceptable force.'" *Id.* (quoting *Saucier*, 533 U.S. at 206).  The Court in this instance does not have the benefit of a summary judgment record where evidence has been developed regarding the events of April 20, 2011, but is ruling on a motion to dismiss where all allegations must be taken as true.  "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville*, 567 F.3d at 167 (quoting *Graham*, 490 U.S. at 396).  Officer Jackson's entitlement to qualified immunity, while denied at this juncture, can be re-visited later in the case.

attempting to grab tools from the bed of a truck was reasonable force under the totality of the circumstances faced by the Officer. *See* Def. Mot. at 13 (citing *Kellough v. Bertrand*, 22 F. Supp. 2d 602, 607 (S.D. Tex. 1998)). Further, as Officer Jackson notes, David White fails to allege that the broken skin on his hand was disproportionate or excessive in the face of a reasonably perceived need for force. *See id.* (citing Saucier, 533 U.S. at 205).

Based on the foregoing, the Court concludes that Officer Jackson's motion to dismiss David White's excessive force claim should be granted, as David White has failed to adequately allege that the force used by Officer Jackson was clearly excessive or unreasonable under the circumstances alleged in the complaint. Alternatively, the Court agrees that Officer Jackson is entitled to dismissal based on qualified immunity, as Plaintiff David White has failed to negate Officer Jackson's qualified immunity defense. Otherwise stated, Officer Jackson is entitled to qualified immunity from David White's excessive force claim because the pleadings fail to allege that Officer Jackson's conduct was objectively unreasonable under clearly established law. *See generally Saucier*, 533 U.S. at 201; *Anderson*, 483 U.S. at 638, 640-44; *Graham*, 490 U.S. at 396-97.

### C. Officer Jackson Sued in His Individual Capacity - First Amendment Claims

Officer Jackson also moves to dismiss Plaintiff Michael White's § 1983 claim for alleged First Amendment violations. To reiterate, Plaintiff Michael White alleges that Officer Jackson's use of excessive force was in retaliation for his verbal complaints and his request to his father that he contact an attorney. *See* First Am. Compl. ¶ 25 ("The use of force by Defendant Jackson was an exercise of retaliatory animus for Michael White's having engaged in protected speech under the First Amendment during the process of his detention and arrest.").

In support of dismissal, Office Jackson argues, "To the extent [Michael White] tries to create a unique claim under a theory that use of force violated his First Amendment rights, that claim fails as well." Def. Reply at 7.   In support, Officer Jackson relies on the case of *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008), a case in which the Fifth Circuit determined that where an arrest is objectively reasonable and supported by probable cause, a First Amendment claim cannot succeed. *See* Def. Mot. at 13.   Citing *Mesa*, Officer Jackson argues that "If a retaliatory arrest claim fails under the First Amendment in the face of probable cause, then a First Amendment claim in the context of an alleged retaliatory use of excessive force must also fail if the force was not excessive." Def. Reply at 7.   In opposition, Plaintiffs contend that *Mesa* is distinguishable, as it concerns an individual arrested with probable cause seeking to raise First Amendment claims for a retaliatory arrest, which is not at issue in this case. *See* Pl. Resp. at 6.   Instead, Plaintiffs argue, "Michael White claims Defendant Jackson employed the E.C.D. against him in retaliation for his comments and complaints, as he was already under arrest and hand-cuffed [and] [t]hat employing the E.C.D. was almost contemporaneous with his telling his dad to call his attorney." *Id.*

The Court agrees with Plaintiffs that *Mesa* is inapposite, as Michael White is not alleging a retaliatory arrest, but retaliatory use of excessive force post-arrest.   Viewing Plaintiffs' allegations as true, the Court finds that Plaintiffs have adequately alleged that Officer Jackson's use of excessive force was in retaliation for Michael White's exercise of his First Amendment right to free speech, and Officer Jackson's motion to dismiss should be denied.   *See generally City of Houston v. Hill*, 482 U.S. 451, 462 (1987) (the "First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."); *Mesa*, 543 F.3d at 273 (citing *Lewis v. City of New*

*Orleans*, 415 U.S. 130, 134-35 (1974) (Powell, J., concurring)) ("Trained officers must exercise restraint when confronted with a citizen's anger over police action.").

## IV.     Conclusion

Based on the foregoing, the Court **grants in part and denies in part** Defendants' Second Motion to Dismiss for Failure to State a Claim.  In particular, pursuant to Fed. R. Civ. P. 12(b)(6), the Court **grants** Defendants' motion to dismiss Plaintiffs Michael White's and David White's § 1983 claims against the City of Holliday, and **grants** Defendants' motion to dismiss Plaintiff David White's § 1983 claims against Defendant Dwayne Jackson based on qualified immunity.  The Court **dismisses** these claims **with prejudice**.

The Court **denies** Defendants' motion to dismiss Plaintiff Michael White's § 1983 claims against Defendant Dwayne Jackson, and **denies as moot** Defendants' Alternative Request for Rule 7(a) Reply to Immunity.

An order requiring a scheduling conference and report for contents of scheduling order under Fed. R. Civ. P. 16(b) and 26 will issue separately.

**SO ORDERED** this **10th** day of **January, 2014.**


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

.

23